UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| TENNESSEE BONDING COMPANY, et al. | ) |
|---|---|
| Plaintiffs, | ) |
| v. | ) No. 3:24-cv-01325 |
| TENNESSEE ASSOCIATION OF PROFESSIONAL BAIL AGENTS, et. al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This case arises from Plaintiffs Tennessee Bonding Company's, Brian Cole's, and Kenneth Holmes' (collectively, "Plaintiffs") allegations against Defendants Tennessee Association of Professional Bail Agents, Kimberly Alexander, A Close Bonding Company, Ronnie Carter, Free Bird Bail Bonds, Tosha Shepard, American Bonding, Paul Roscoe Williams, Jail Busters Bail Bonds, Nick DeBord, City Bonding Company, Inc., Andy Kirkland, Andy Kirkland Bail Bonds, Gloria Pressley, A1 Bail Bonds, Anna Denise Evans, Affordabail Bail, LLC, David Humphrey, Anytime Bail Bonds LLC, Julie Morrell, Southeastern Bonding, Tony Duckworth, A Angel Bonding, LLC, Leah L. Hulan, and Grumpy's Bail Bonds, LLC (collectively, "Defendants"). Plaintiffs allege that Defendants: (1) conspired to discriminate and (2) discriminated against Plaintiffs on the basis of race in violation of 42 U.S.C. § 1981; (3) tortiously interfered with Tennessee Bonding Company's contractual relationships; and (4) defamed Tennessee Bonding Company. (See generally Doc. No. 1). Plaintiffs also allege (5) breach of fiduciary by Defendants Tennessee Association of Professional Bail Agents, Kimberly Alexander, Ronnie Carter, Tosha Shepard, and Paul Roscoe Williams. (See generally id.).

Before the Court is Plaintiffs' Expedited Motion to Disqualify Counsel for Defendants ("Motion to Disqualify") (Doc. No. 38), to which Defendants have filed a Response (Doc. No. 42), Plaintiffs have filed a Reply (Doc. No. 44), and Defendants have filed a Sur-Reply (Doc. No. 46-1). Also before the Court is Plaintiffs' Motion for Leave to File a Response to Sur-Reply ("Motion for Leave") (Doc. No. 52), to which Defendants have filed a Response (Doc. No. 53), and Plaintiffs have filed a Reply (Doc. No. 55).[1] For the reasons below, the Court will deny the Motion to Disqualify and deny Motion for Leave as moot.

I. **LEGAL STANDARD**

"Although a district court possesses inherent authority to disqualify an attorney to aid the fair administration of justice, it is not to use this remedy lightly; that is, courts must remain sensitive to the parties' choice of counsel and weigh that interest against the public's interest in fair judicial process." Barker v. Prof'l Educators of Tennessee, No. 3:12-CV-0044, 2012 WL 1900920, at *3 (M.D. Tenn. May 23, 2012). "Whether to disqualify an attorney turns on the peculiar factual situation of the case." Eon Streams, Inc. v. Clear Channel Commc'ns, Inc., No. 3:05-CV-578, 2007 WL 954181, at *3 (E.D. Tenn. Mar. 27, 2007). "A court must view a motion for disqualification with extreme caution because it can easily be misused as a harassment technique." Am.'s Collectibles Network, Inc. v. Sterling Commerce (Am.) Inc., No. 3:09-CV-143-TRM-HBG, 2017 WL 2598491, at *3 (E.D. Tenn. Feb. 8, 2017). "'Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary.'" McCool v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada, AFL-CIO, No. 13-13614, 2014 WL 635797, at *3

---

[1] In a previous order (Doc. No. 57), the Court stayed this case pending its ruling on the Motion to Disqualify and allowed Plaintiffs to file their response to Defendant's Motion to Dismiss (Doc. No. 34) within ten (10) days of the present ruling.

(E.D. Mich. Feb. 18, 2014) (citing In re Valley-Vulcan Mold Co., 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999), aff'd, 5 F. App'x 396 (6th Cir. 2001)). "The decision of whether to disqualify counsel is a matter of discretion." Hosse v. Sumner Cty. Bd. of Educ., No. 3:13-00520, 2015 WL 1505838, at *6 (M.D. Tenn. Apr. 1, 2015) (citing Grain v. Trinity Health, 431 F. App'x 434, 447 (6th Cir.2011)). "The moving party has the burden of proving that opposing counsel should be disqualified." Melville Capital, LLC v. Tennessee Commerce Bank, No. 3:11-CV-00888, 2011 WL 6888526, at *1 (M.D. Tenn. Dec. 29, 2011) (quotation marks omitted).

An evidentiary hearing is not necessary on every motion for disqualification, but a district court must conduct a "factual inquiry" in a manner that will allow for appellate review. General Mill Supply Co. v. SCA Servs., Inc., 697 F.2d 704, 710 (6th Cir. 1982). To forgo a hearing, a court must review affidavits and documents that would be acceptable under Rule 56(e) and must "not undertake to decide disputed issues of fact." Id. Here, the parties did not request an evidentiary hearing, and the Court concludes that no evidentiary hearing is necessary to resolve the issues presented in the Motion to Disqualify.

A district court's authority to disqualify attorneys for unethical behavior is derived from two sources: (1) the local rules of the court in which they appear and, (2) federal law. Bartech Indus., Inc. v. Int'l Baking Co., 910 F. Supp. 388, 392 (E.D. Tenn. 1996). Here, Plaintiffs bring their Motion to Disqualify pursuant to former Local Rule 83.01(c)(6), which, in relevant part, incorporates by reference the Tennessee Rules of Professional Conduct.[2] (See generally Doc. No. 38).

---

[2] Former Local Rule 83.01(c)(6) has since been replaced with Local Rule 83.00, which, in relevant part, serves the same purpose.

"This District has adopted the current Tennessee Rules of Professional Conduct as the standard of professional conduct of the members of the bar of this Court." <u>Devs. Diversified of Tennessee, Inc. v. Tokio Marine & Fire Ins. Co.</u>, No. 3:04-CV-00015, 2019 WL 1861322, at *4 (M.D. Tenn. Apr. 25, 2019). Rule 1.7 of the Tennessee Rules of Professional Conduct establishes the standard for disqualification on the basis of a conflict of interest with a current client. In relevant part, Rule 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

Tenn. Sup. Ct. R. 8, RPC 1.7. Rule 1.9 governs conflict of interest with former clients. Rule 1.9 provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> (b) Unless the former client gives informed consent, confirmed in writing, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
>
> > (1) whose interests are materially adverse to that person; and

(2) about whom the lawyer had acquired information protected by RPCs 1.6 and 1.9(c) that is material to the matter.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter reveal information relating to the representation or use such information to the disadvantage of the former client unless (1) the former client gives informed consent, confirmed in writing, or (2) these Rules would permit or require the lawyer to do so with respect to a client, or (3) the information has become generally known.

Id. 1.10.[3] Finally, Rule 1.10 imputes the conflict of interest to an attorney's law firm, stating that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so[.]" Id. Rule 1.10(a). Rule 1.0(c) defines a firm as "a lawyer or lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation, government agency, or other organization." Id. 1.0(c). A comment on Rule 1.0(c) specifies, in relevant part:

Whether two or more lawyers constitute a firm within paragraph (c) can depend on the specific facts. For example, ***two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm***.

---

[3] The Sixth Circuit has articulated its own test with respect to disqualification because of a conflict of interest with a client:

(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification.

Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio, 900 F.2d 882, 889 (6th Cir. 1990). This test, however, is not different from the requirements the Tennessee Rules of Professional Conduct, which courts generally look to to determine whether an attorney should be disqualified due to a conflict of interest. Gracey Gen. P'ship v. City of Clarksville, Tennessee, No. 3:23-CV- 01189, 2024 WL 3532249, at *5 (M.D. Tenn. July 24, 2024); Colonial Pipeline Co. v. Metro. Nashville Airport Auth., No. 3:20-CV-00666, 2021 WL 3172313, at *5 (M.D. Tenn. July 27, 2021). The Court will therefore not conduct a separate Dana analysis. In addition, while Plaintiffs cite Dana in their Memorandum in Support of the Motion to Disqualify (see Doc. No. 39 at 4), they ground their Motion to Disqualify solely in former Local Rule 83.01(c)(6) and the Tennessee Rules of Professional Conduct, not federal law.

> *However, if they present themselves to the public in a way that suggests that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the Rules.* The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to information concerning the clients they serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the Rule that is involved. A group of lawyers could be regarded as a firm for purposes of the Rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the Rule that information acquired by one lawyer is attributed to another.

Id. (comment [2] (emphasis added)).

## II. ANALYSIS

### A. Summary of the Parties' Arguments

Plaintiffs contend that Defendants' counsel in this case, Bryan Moseley,[4] shares office space with Joel H. Moseley, Jr.,[5] who has represented Plaintiffs in the past and currently represents Tennessee Bonding Company on a pending matter in state court. (Doc. No. 39 at 2). Plaintiffs attached as exhibit a printout of the Tennessee Supreme Court's Board of Professional Responsibility's website, showing that Bryan Moseley and Joel Moseley share the same address. (See Doc. No. 39-4 at 1–2). Plaintiffs further point out that the address Joel Moseley and Bryan Moseley share is that of the law firm Moseley & Moseley, Attorneys at Law ("Moseley & Moseley").[6] (Id. at 8). Moreover, Plaintiffs contend that Bryan Moseley and Joel Moseley are both part of Moseley & Moseley. In support of this contention, Plaintiffs rely on an exhibit consisting of a printout of two court dockets from PACER and two printouts of related opinions

---

[4] Counsel's legal name is James Bryan Moseley, but it is the Court's understanding that his preference is to use his middle name. (See Doc. No. 46-1 at 3). Accordingly, the Court will refer to him as Bryan Moseley.

[5] The Court will refer to Joel H. Moseley, Jr. as "Joel Moseley" and to Joel H. Moseley, Sr by his full name. (Cf. Doc. No. 40-1 ¶2 (noting that Joel Moseley is Bryan Moseley's brother and that Joel H. Moseley, Sr., who also used to practice at Moseley & Moseley, was their father)).

[6] There is no dispute that Bryan Moseley is a partner at Moseley & Moseley.

on Westlaw, ranging from 2018 to 2022, showing "Moseley & Moseley" under the name of both attorneys. (See generally Doc. No. 39-4).[7]

As for Joel Moseley's current representation of Plaintiffs, Plaintiffs rely on a sworn declaration by Kenneth Holmes, one of the Plaintiffs and a shareholder of Tennessee Bonding Company. He states that Joel Moseley currently actively represents Tennessee Bonding Company with respect to a petition to allow Tennessee Bonding Company to write bonds that will require Joel Moseley to attend hearings and advocate on Tennessee Bonding Company's behalf. (See generally Doc. No. 39-1 at 2). As for former representations, Plaintiffs contend that Joel Moseley has represented them in multiple matters sufficiently related to the present litigation to create a conflict of interest. (See Doc. No. 39 at 8). Specifically, Plaintiffs contend that Joel Moseley has represented them in matters related to the authority of Tennessee Bonding Company to write bonds. He also helped drafting Tennessee Bonding Company's corporate policies and employee handbook. (See id. (citing Doc. No. 39-2 (court filings regarding Joel Moseley's representation of Plaintiffs)), and Doc. No. 39-3 (email regarding Joel Moseley's involvement in the creation of Tennessee Bonding Company's operational and employment policies)). Plaintiffs further contend that Joel Moseley "acquired confidential and proprietary information regarding Plaintiffs and their business, which could be used against the Plaintiffs in the current litigation." (Doc. No. 39 at 3). Specifically, Plaintiffs claim that they shared confidential information with Joel Moseley in each matter, including personal information, trade secrets, and business operations of Tennessee Bonding Company. (See Doc. No. 39 at 9; see also Doc. No. 39-1 ¶ 13 (sworn declaration)).

---

[7] As for PACER, the names of both attorneys and Moseley & Moseley appear on top of the docket sheet, above the filings, in the portion listing the parties' attorneys. As for the Westlaw opinions, the attorney's names and Moseley & Moseley appear at the very top, above where the opinions begin. (Id.).

Plaintiffs conclude that the allegations in the Complaint in this case "involve interference by Defendants with Tennessee Bonding Company's ability to write bonds" and that Joel Moseley's former and current representation of Plaintiffs is substantially related to this case and adverse to Plaintiffs' interests under Rules 1.7, 1.9, and 1.10. (Id. at 9–10). Finally, Plaintiffs contend that neither Joel Moseley nor Bryan Moseley sought or obtained informed written consent from any of the Plaintiffs before Bryan Moseley took on the representation of Defendants in this case. (Id. at 3).

In response, Defendants do not deny that Joel Moseley currently represents Tennessee Bonding Company and represented other Plaintiffs in the past. (See generally Doc. No. 40). Instead, Defendants argue that "[t]he fact that Bryan Moseley and [Joel Moseley] share office space and/or have acted as co-counsel in prior cases is not enough to find that these two attorneys are in the same firm." (Id. at 5). Defendants further contend that Joel Moseley and Bryan Moseley have served as mere co-counsel in the cases and dockets Plaintiffs attached to their Motion to Disqualify (see generally Doc. No. 39-4) and that their signature blocks at the bottom of filings in those cases were separate, with Moseley & Moseley only appearing under Bryan Moseley's signature but not Joel Moseley's. (Doc. No. 40 at 5–6 (citing Doc. No. 40-2 (complaint in one of the two cases, showing separate signature blocks))). Defendants also note that Joel Moseley filed the complaint in one of these cases but that Bryan Moseley as well as Moseley & Moseley entered their appearance later in the process, indicating that Joel Moseley was not part of Moseley & Moseley. (See Doc. No. 40 (citing Doc. No. 40-3 (appearance of Moseley & Moseley and Bryan Moseley over a month after Joel Moseley filed the complaint bearing his signature))).[8] Defendants

---

[8] The Court has reviewed all filings on the dockets of these two cases but did not find a single filing by Bryan Moseley or Joel Moseley representing that Joel Moseley was part of Moseley &

8

Case 3:24-cv-01325    Document 69    Filed 07/11/25    Page 8 of 18 PageID #: 562

claim that that Joel Moseley is listed as part of Moseley & Moseley on top of the docket sheets (and related Westlaw opinions) as the result of a clerical error by a third party. (Id. at 6). Defendants further note that Joel Moseley and Bryan Moseley have different email addresses and domains as well as different telephone numbers. (Id.). Finally, Defendants argue that the Tennessee Rules of Professional Conduct consider attorneys as belonging to the same firm based on their own actions, not those of a third party. (Id. (citing comment [2] to R. 8, RPC 1.0)).

In support of their arguments, Defendants rely on a declaration by Bryan Moseley. There, he avers stating that: (1) he and Joel Moseley used to work for Moseley & Moseley with their parents, Joel H. Moseley, Sr. and Susan H. Moseley; (2) Joel Moseley permanently left Moseley & Moseley in 2008; (3) since 2016, Moseley & Moseley has been a general partnership between Bryan Moseley and Susan H. Moseley; (4) Bryan Moseley "allow[s] several attorneys to use [his] firm's office as their physical office in Tennessee" but "maintain[s] a separate law firm from these attorneys, including [Joel Moseley]; (5) Bryan Moseley sometimes receives phone calls asking for "Joel Moseley" (Sr. or Jr.) but always informs the caller that Joel Moseley is not part of Moseley & Moseley; (6) Bryan Moseley only worked as co-counsel with Joel Moseley on a few cases, and both attorneys maintained separate offices in each such case as indicated by signature blocks in filings; (7) Bryan Moseley has not been or held himself to be in a law firm with Joel Moseley for 16 years; (8) Joel Moseley primarily works from home and travels across the state; (9) Joey Moseley does not maintain any records at Moseley & Moseley's address but has used the conference room to meet with clients; (10) both attorneys maintain separate phone numbers and

---

Moseley. In addition, both attorneys used separate signature blocks and email addresses and domains. The Court will take judicial notice of these filings and the absence of such representation therein *sua sponte*. (See Pers. v. Marshall, No. 2:22-CV-10, 2022 WL 601097, at *4 (W.D. Mich. Mar. 1, 2022) (a court may take judicial notice of public record at any stage of the proceeding) (citing Fed. R. Evid. 201, and Bailey v. City of Ann Arbor, 860 F.3d 382, 386 (6th Cir. 2017)).

email addresses; (11) Moseley & Moseley does not represent that Joel Moseley is part of the firm; (12) Bryan Moseley and Moseley & Moseley do not share information, files, staff, computer systems, or bank accounts with Joel Moseley; (13) Moseley & Moseley does not treat Joel Moseley as part of the firm for tax purposes, meaning that Joel Moseley does not receive K-1 tax forms for cases in which he served as co-counsel but rather a 1099 "just as any other . . . co-counsel"; (14) Moseley & Moseley does not provide insurance coverage to Joel Moseley; and (15) nobody at Moseley & Moseley, including Bryan Moseley, has ever been retained to represent any of the Plaintiffs; nor has Bryan Moseley ever consulted with or advised Joel Moseley regarding his representation of Plaintiffs. (See generally Doc. No. 40-1). On this basis, Defendants argue that "there is no factual basis to conclude that [] Bryan Moseley and Joel [] Moseley [] are in the same law firm" and, thus, that there can be no imputed conflict of interest. (Doc. No. 40 at 7).

Defendants also argue that Plaintiffs failed to show that Joel Moseley represented them in substantially related proceedings or acquired any confidential information from them. (See Doc. No. 40 at 8–10). Finally, Defendants opine that Plaintiffs' Motion to Disqualify is an attempt to deprive Plaintiffs of their counsel of choice and that their counsel has "unique experience in both bail bonding matters as well as civil rights litigation." (Id. at 10).

In their Reply, Plaintiffs essentially restate prior arguments and allegations in Bryan Moseley's declaration. (See generally Doc. No 44). In addition, Plaintiffs characterize Bryan Moseley's allegation that Moseley & Moseley issued 1099 forms to Joel Moseley and paid him "just as any other . . . co-counsel" as meaning that Moseley & Moseley "bills clients" in its name and then "pays Joel Moseley for the work done for those clients." (Id. at 3).

B. Appearance of Impropriety

In their Reply, Plaintiffs also make the new argument that the facts of this case create an appearance of impropriety, which Plaintiffs argue is sufficient to warrant disqualification. (Id.). However, the appearance-of impropriety standard has been abandoned by the current Rules of Professional Conduct, except for a narrow exception not applicable here. See comment 9 to R. 8, RPC 1.0; State v. Eady, 685 S.W.3d 689, 707 (Tenn. 2024). Nonetheless, Tennessee courts continued to apply this standard until recently (see e.g, State v. Grooms, No. W201901324CCAR10CD, 2020 WL 9171956, at *8 (Tenn. Crim. App. Nov. 25, 2020), overruled by Eady, 685 S.W.3d 689)). However, this ended in early 2024, when the Tennessee Supreme Court ruled that the appearance of impropriety no longer remains an independent ground for imputed disqualification, effectively eliminating the standard from Tennessee law. See Eady, 685 S.W.3d at 707. Accordingly, the Court will not consider arguments based on an appearance of impropriety. See State v. King, 703 S.W.3d 738, 774 (Tenn. Crim. App. 2024) (refusing to address such arguments in light of the Eady decision).

There remains the question of whether the appearance-of-impropriety standard still applies under federal law.[9] However, the Court needs not answer this question because, as stated above

---

[9] Without expressing an opinion on this issue, the Court notes it is a complex one because district courts generally look at codified rules of professional conduct when ruling on a motion to disqualify, even when applying federal law. (See Gracey, 2024 WL 3532249 at *5). Gracey, which is unreported, appears to be the only post-Eady opinion in which a federal court in Tennessee applied the appearance-of-impropriety standard. With respect to this issue, Gracey relied on a line of cases which did not apply Tennessee law. See Seaman Corp. v. Zurich Am. Ins. Co., 643 F. Supp. 3d 790, 796 (N.D. Ohio 2022) (citing Gordon v. Dadante, No. 1:05-CV-2726, 2009 WL 2732827, at *6 (N.D. Ohio Aug. 26, 2009) (collecting cases)). Gracey is also factually distinguishable, insofar as all criteria for disqualification were met, which is not the case here. See Gracey, 2024 WL 3532249 at 6–8. Despite all criteria being met, the Gracey court emphasized that: "it finds no basis for concluding that . . . any . . . attorney has engaged in inappropriate conduct or has intentionally used confidential client information to the disadvantage of [his or her clients]."

(see supra at 3), Plaintiffs bring their Motion to Disqualify under solely under the Tennessee Rules of Professional Conduct via the Local Rules. As such, the Court will not disqualify Moseley & Moseley based on an appearance of impropriety.

Relatedly, Defendants filed a Sur-Reply to address the appearance-of-impropriety argument raised by Plaintiffs in their Reply. (See generally Doc. No. 50). Plaintiffs seek leave to file a Response to the Sur-Reply to address what they characterize as a new argument in the Sur-Reply. (See generally Doc. No. 52 (Motion for Leave); Doc. No. 52-1 (proposed Response to Sur-Reply)). Because the appearance-of-impropriety standard is not an independent basis for disqualification under Tennessee law anymore, because these filings address Plaintiffs' appearance-of-impropriety argument, and because any other argument therein would be beyond the scope of the Sur-Reply or Response thereto, the Court will not consider the Sur-Reply and the Response to the Sur-Reply.

C. Plaintiffs Failed to Meet Their Burden to Show That Bryan Moseley and Joel Moseley Are Part of the Same Firm Under Rule 1.10

As stated, the parties do not dispute that Joel Moseley currently represents Tennessee Bonding Company in an unrelated case and that he represented all Plaintiffs in the past. Therefore, the Court's decision on the Motion to Disqualify boils down to whether Plaintiffs have succeeded in showing that Bryan Moseley and Joel Moseley are part of the same firm under Rule 1.10, *i.e.*, whether they presented themselves to the public in a manner suggesting that they are part of the

---

Id. at 8. Regardless, the Gracey court decline[d] to weigh the competing issues with hair-splitting nicety, and, in view of preventing even the appearance of impropriety, . . . resolve[d] all doubts in favor of disqualification." (Id. (quotation marks omitted)). Because all criteria for disqualification were met, the Gracey court's reliance on the appearance-of-impropriety standard was likely dictum. Overall, the Court is not convinced that an appearance-of-impropriety standard, distinct from any standard mandated by the Tennessee Rules of Professional Conduct, still exists under applicable federal law.

12
Case 3:24-cv-01325    Document 69    Filed 07/11/25    Page 12 of 18 PageID #: 566

same firm or conducted themselves as a firm. See Tenn. Sup. Ct. R. 8, RPC 1.0 comm. [2]. For the reasons below, Court finds that Plaintiffs failed to meet this burden.

The parties' briefing and related exhibits establish that: (1) Bryan Moseley and Joel Moseley practice at the same address as they represented to the Tennessee Supreme Court's Board of Professional Responsibility; (2) in at least two cases, Moseley & Moseley issued a payment to Joel Moseley using a 1099 form; and (3) the docket sheets of two cases filed in this District show that Joel Moseley is part of Moseley & Moseley (but no filing in those cases by Joel Moseley, Bryan Moseley, or Moseley & Moseley suggests so). The Court will address each in turn.

1. Same Address[10]

Based on their representations to the Tennessee Supreme Court's Board of Professional Responsibility, the Court easily finds that Bryan Moseley and Joel Moseley practice at the same address. (See Doc. No. 39-4 at 1–2). However, Plaintiffs cite no authority that simply practicing at the same address warrants the imputation of a conflict of interests under Rule 1.10. Based on the language of comment [2] to Rule 1(c) of the Rules of Professional conduct, the Court finds that it does not. See Tenn. Sup. Ct. R. 8, RPC 1.0(c), comm. [2] ("two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm"). Persuasive authority also supports this finding. See United States v. Varca, 896 F.2d 900, 903 (5th Cir. 1990) ("practitioners who share office space and occasionally consult with one another are not regarded as constituting a single firm for conflict purposes" (citing Rules 1.9 and 1.10 of the Rules of Professional Conduct of the Louisiana State Bar Association and their parallel provisions in the ABA Model Rules)); A.B.A., Formal Op. 507 at 4–7 (2023) (discussing conflicts

---

[10] The Court understands Plaintiffs' references to Joel Moseley's use of Moseley & Moseley's conference room to meet clients as part of the argument that both attorneys practice at the same address. (Cf. Doc. No. 44 at 3).

of interests and related imputation issues for lawyers who share offices, represent clients with adverse interests, and consult each other about their respective client matters; further noting that Rule 1.10 does not automatically treat office-sharing lawyers who occasionally consult each other as being part of the same firm for conflict-of-interest purposes).

Similarly, in Sixth Amendment cases, multiple courts have found that sharing office space does not establish that two lawyers are associated for conflict-of-interest purposes. See, e.g., United States v. Hardin, No. CIV. 11-10738, 2011 WL 2118941, at *4–5 (E.D. Mich. May 27, 2011) (for Sixth Amendment purposes, "the sharing of office space alone is not sufficient to create a conflict of interest" (collecting cases)); United States v. Whitney, 180 F. App'x 670, 674 (9th Cir. 2006) ("merely sharing office space does not establish joint representation for Sixth Amendment purposes"); United States v. Kindle, 925 F.2d 272, 275 (8th Cir. 1991) (no conflict of interest for Sixth Amendment purposes when two attorneys merely have the same address); United States v. Pungitore, 910 F.2d 1084, 1140 (3d Cir. 1990) (sharing office space and participating in joint trials was insufficient to establish that two lawyers were associated); United States v. Bell, 506 F.2d 207, 224 (D.C. Cir. 1974) (affirming trial court's finding that attorneys practiced independently despite sharing office space).

In sum, Plaintiffs have established that Joel Moseley and Bryan Moseley practice at the same address. However, this is insufficient to warrant disqualification under Rule 1.10.

2. Payments to Joel Moseley

Plaintiffs contend that "Bryan Moseley issues bills to clients through the d/b/a tradename 'Moseley & Moseley' for legal services provided by Joel Moseley, and then Moseley & Moseley pays Joel Moseley for the work done by Joel for those clients." (Doc. No. 44 at 3). In support of this contention, Plaintiffs rely on the declaration of Bryan Moseley, which states that:

> As only myself and my mother are the general partners of Moseley and Moseley, Attorneys at Law, only myself and my mother receive K-1 tax forms from my firm. Any payments made to [Joel Moseley] from my firm were recorded as 1099 payments just as any other payment to any other co-counsel would have been.

(Doc. No. 40-1 ¶ 20). The Court appreciates that the form of tax returns—K-1 or 1099—is not dispositive. Two lawyers could work in the same firm as equity partner and non-equity associate. However, the Court finds that, without more, this statement does not support a finding that Bryan Moseley issued bills to clients representing that Joel Moseley was part of Moseley & Moseley. Indeed, nothing in the record factually supports that Moseley and Moseley issued such bills.[11] Plaintiffs also failed to show that Joel Moseley and Bryan Moseley acted as more than mere co-counsel in the cases at issue. Again, persuasive authority supports the argument that a co-counsel relationship does not warrant imputed disqualification under Rule 1.10, at least absent disclosure of confidential client information between the co-counsel. See Farrell v. Hess Oil Virgin Islands, 57 V.I. 50, 61–65 (Super. Ct. 2012) (no imputed disqualification for co-counsel under ABA Model Rule 1.10); Ex parte Wheeler, 978 So. 2d 1, 10 (Ala. 2007), as modified on denial of reh'g (Aug. 17, 2007) (no imputed disqualification for co-counsel under Alabama Rule of Professional Conduct 1.10).

Plaintiffs therefore failed to meet their burden to establish that, in connection with the 1099 payments, Bryan Moseley and Joel Moseley presented themselves to the public in a manner suggesting that they are part of the same firm or conducted themselves as a firm.

---

[11] Plaintiffs did not request discovery on this issue.

3. Docket Sheets[12]

Court docket sheets are public records. Schuchardt v. Bloomberg L.P., No. 3:22-CV-01017, 2024 WL 1144226, at *13 (M.D. Tenn. Mar. 15, 2024); Jackson v. Vescovo, No. 15-CV-02774-JDT-TMP, 2016 WL 769834, at *1 n.1 (W.D. Tenn. Jan. 27, 2016), report and recommendation adopted, No. 15-2774-JDT-TMP, 2016 WL 797604 (W.D. Tenn. Feb. 26, 2016); Moulton v. Auto-Owners Ins., No. 3:11-CV-121, 2013 WL 416302, at *3 (E.D. Tenn. Feb. 1, 2013); Yates v. Cash Am. Inc., No. 08-2742, 2009 WL 10699443, at *2 (W.D. Tenn. Nov. 23, 2009); United States v. Seventy Thousand One Hundred Fifty Dollars in U.S. Currency ($70,150.00), No. 1:02-CV-00874, 2009 WL 3614871, at *3 (S.D. Ohio Oct. 28, 2009). Therefore, any representation by Joel Moseley and Bryan Moseley on a docket sheet that the former is part of Moseley & Moseley is relevant to the question of whether Joel Moseley and Bryan Moseley presented themselves to the public in a manner suggesting that they are part of the same firm or conducted themselves as a firm.

In relation to the docket sheet printouts that Plaintiffs set forth, Defendants contend that "a clerk or some other third party mistakenly listed [Joel Moseley] as being [part of Moseley & Moseley.]" (See Doc. No. 40 at 6–7).[13] Because Plaintiffs do not dispute this contention (see generally Doc. No. 44), the Court will not treat it as a disputed issue of fact. Relying on Comment

---

[12] This analysis also applies to the related opinions on Westlaw.

[13] As noted above, there are no filings by Bryan Moseley or Joel Moseley on the docket sheets at issue indicating that Joel Moseley is part of Moseley & Moseley. The only such filing is a joint motion filed by opposing counsel, in which opposing counsel listed Joel Moseley as belonging to Moseley & Moseley. (See Grumpy Bail Bonds, LLC, et al. v. Rutherford County, Tenn., et al., Case No. 3:20-cv-00923 (Doc. No. 17)). On the same day, opposing counsel filed another joint motion, which did not list Joel Moseley as belonging to Moseley & Moseley. (See generally id. Doc. No. 19)). Further, according to the Court's own research, there appears to be no other post-2008 docket sheet (or Westlaw opinion) in which Joel Moseley is listed as practicing at Moseley & Moseley.

[2] to Tennessee Rule of Professional Conduct 1.0, Defendants further argue that "attorneys are considered to be in the same firm . . . based on their actions, not a third party's actions." (Id. at 7.) Plaintiffs do not address this argument in their Reply. (See generally Doc. No. 44). Plaintiffs also do not argue that Joel Moseley, Bryan Moseley, or Moseley & Moseley had a duty to rectify these purported third-party errors. (See generally id.).

Accordingly, the narrow question for the Court is whether the failure to rectify a purported error on two court docket sheets amounted to Joel Moseley and Bryan Moseley presenting themselves to the public in a way that suggested Joel Moseley is affiliated with Moseley & Moseley. There appears to be no case or formal ethics opinion discussing a similar set of facts. However, the Court notes that nothing in the record establishes that that Joel Moseley, Bryan Moseley, or Moseley & Moseley had knowledge of the purported errors prior to Plaintiffs filing their Motion to Disqualify. As such, without additional factual or legal authority, and without the possibility to apply the appearance-of-impropriety standard, the Court cannot find that an ethical violation justifying disqualification occurred.

In light of the above, the Court concludes that Plaintiffs failed to show that Moseley & Moseley should be disqualified and, thus, failed to meet their burden on the Motion to Disqualify. Accordingly, the Court will deny the Motion to Disqualify. See McKinney v. McMeans, 147 F. Supp. 2d 898, 902 (W.D. Tenn. 2001) (denying motion to disqualify where the movant failed to meet the burden of showing opposing counsel should be disqualified); Tennessee Bank & Tr. v. Lowery, No. CIV. 3:11-0984, 2012 WL 4849968, at *1 (M.D. Tenn. Oct. 11, 2012) (same); Concepta Bus. Sols., LLC v. Cogent Analytics, LLC, No. 1:16-CV-438, 2016 WL 10490472, at *1 (S.D. Ohio June 23, 2016) (same).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Disqualify (Doc. No. 38) will be denied. Plaintiffs' Motion for Leave (Doc. No. 52) will be denied as moot.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE